UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANDRA R.,

                                                                                                          DECISION AND ORDER

                            Plaintiff,

                                                                                                        22-CV-0894DGL

                         v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

       Plaintiff appeals from a denial of disability benefits by the acting Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

       On October 19, 2016, plaintiff filed an application for supplemental security income benefits, alleging an inability to work since September 28, 2010. Her application was initially denied. Plaintiff requested a hearing, which was held before Administrative Law Judge Timothy McGuan, who issued an unfavorable decision on January 30, 2019 (Dkt. #6 at 79-98).

       Plaintiff appealed, and the Appeals Council reversed and remanded the matter for further proceedings, including but not limited to the obtainment of additional evidence, and further consideration of the opinions of plaintiff's treating physician, in light of the factors set forth in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). After a supplemental hearing was held but before a new decision could be issued, the matter was reassigned to Administrative Law Judge Mary Mattimore (the "ALJ"), who considered the entire record, including the supplemental hearing transcript and the evidence gathered on remand, and issued a new decision on May 27, 2021, again

concluding that plaintiff was not disabled. (Dkt. #6 at 19-30). That decision became the final decision of the Commissioner when the Appeals Council denied review on September 12, 1011. (Dkt. #6 at 1-8). This action followed.

The plaintiff has moved for judgment on the pleadings reversing the decision and remanding for further proceedings (Dkt. #11), and the Commissioner has cross moved for judgment on the pleadings (Dkt. #15), pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical history, and determined that she has the severe impairments, not meeting a listed impairment, of Kienbock's disease (restricted blood flow to a small bone of the wrist, causing bone death), mild asthma, left lateral epicondylitis (tennis elbow), and obesity. (Dkt. #6 at 22).

The ALJ observed that plaintiff had also been diagnosed with affective disorder. Applying the special technique for mental impairments, the ALJ determined that plaintiff has no limitation in understanding, remembering, and applying information, no limitation in interacting with others, a mild limitation in maintaining concentration, persistence, and pace, and a mild limitation in

adapting or managing herself. (Dkt. #6 at 22-24). The ALJ accordingly concluded that plaintiff's mental impairments were not disabling, and were nonsevere, but indicated that her RFC assessment reflected the degree of limitation caused by plaintiff's mental impairments. (Dkt. #6 at 24).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform a limited range of sedentary work, with no more than frequent handling and fingering bilaterally with the upper extremities, and no more than occasional exposure to respiratory irritants, extreme temperatures, and humidity. (Dkt. #6 at 24).

When presented with this RFC as a hypothetical, vocational expert Whitney Eng testified that an individual of plaintiff's age (thirty-three years old on the alleged onsite date, and forty-four as of the supplemental hearing date) and educational level (limited), with this RFC, with no past relevant work, could perform the representative sedentary unskilled occupations of addressing clerk, call-out operator, and document preparer. (Dkt. #6 at 30). The ALJ accordingly found plaintiff not disabled.

I.  **The ALJ's Evaluation of Plaintiff's Ability to Handle and Finger**

Plaintiff argues that the ALJ erred by failing to properly evaluate the evidence of record, particularly the medical opinions of plaintiff's treating physician, concerning the impact of plaintiff's wrist and elbow-related impairments on her ability to handle and finger.

The "treating physician rule," which is applicable to the analysis of claims which were, like plaintiff's, filed on or before March 27, 2017, provides that a treating physician's opinion is entitled to controlling weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §404.1527(c)(2). In determining the weight to be afforded to a treating

physician's medical opinion, the ALJ must consider several factors, including: (1) the frequency of examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors that tend to support or contradict the opinion. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, she must "give good reasons" for her determination. 20 C.F.R. §404.1527 (c)(2). An ALJ's failure to explicitly consider the relevant factors in assigning weight to a treating physician's opinion, or to give good reasons for the weight she assigns, can constitute grounds for a remand. *See Wagner v. Commissioner*, 435 F. Supp. 3d 509, 514-15 (W.D.N.Y. 2020).

The ALJ first evaluated several opinions by plaintiff's treating primary care physician, Dr. Saleha Butt. Plaintiff began treating with Dr. Butt on November 30, 2017 (Dkt. #6 at 535, 746). In addition to regular physicals, Dr. Butt performed pre-operative examinations of plaintiff relative to forearm/wrist surgeries on December 7, 2017, February 7, 2019, and July 23, 2019. (Dkt. #6 at 532, 731, 626). On October 5, 2018, and March 9, 2021, Dr. Butt completed physical RFC questionnaires, collectively opining that plaintiff experienced devastating physical limitations due to symptoms of "Kyne Bucks Disease of Arms" [sic], juvenile osteochondrosis (bone growth disruption) of the wrist, bipolar disorder, and asthma. Dr. Butt described plaintiff as "very limited" in lifting and carrying, pushing, pulling and bending, and working at a consistent pace, and moderately limited in climbing (including using stairs), interacting appropriately with others, maintaining attention and concentration, and understanding, remembering, and carrying out instructions. (Dkt. #6 at 563-64, 746-50).

More specifically, Dr. Butt opined that plaintiff could "occasionally" lift less than 10 pounds, but never 10 pounds or more, and could "rarely/never" balance, stoop, kneel, crouch, crawl, reach in any direction, handle, finger, feel, or tolerate environmental hazards or irritants. Plaintiff could sit, stand, or walk for *less* than 15 minutes at a time, and for *less* than 1 hour total in an 8-hour workday, and required the ability to lie down for more than an hour, every time she engaged in a less-than-15-minute period of sitting, standing, or walking. She would also require the ability to take a rest break lasting more than two hours, every two hours,[1] due to pain and fatigue. Dr. Butt also indicated that plaintiff's symptoms would produce good days and bad days, and would cause her to miss more than four days of work per month. (Dkt. #6 at 746-50). Dr. Butt's opinions were unsupported by any explanation as to how plaintiff's obesity, mild asthma, and bone loss in her wrists, would be expected to produce such dramatic limitations in nearly every area of physical and mental functioning.

The ALJ gave Dr. Butt's RFC opinions "no weight," finding that the first, 2017 opinion was unsupported by plaintiff's treatment notes, which "describ[ed] generally intact physical functioning without objective assessment of upper and lower extremity weakness," and was inconsistent with an August 3, 2018 examination (8 weeks prior to Dr. Butt's first RFC assessment) by treating orthopedic physician's assistant Amanda Cimorelli. Ms. Cimorelli noted that since a wrist surgery 7 ½ months prior, plaintiff's pain had improved, and that although she exhibited less than full range of motion in her wrist, she had full range of motion in her fingers, no muscle weakness or instability, and intact sensation. (Dkt. #6 at 38, 556-58).

---

[1] Given that taking a rest break of *more* than two hours, every two hours, is a temporal impossibility, it is unclear what Dr. Butt meant when she specified this limitation. Regardless, it does not appear to have been supported by any clinical or objective testing, nor does it have a logical relationship with any of plaintiff's medical diagnoses or their symptoms, as described by Dr. Butt, or by plaintiff. (Dkt. #6 at 748).

With respect to Dr. Butt's 2021 opinion, the ALJ noted that Dr. Butt's contemporaneous examination notes indicated no abnormal musculoskeletal findings other than joint stiffness, and no neurological or mental deficits. She also observed that Dr. Butt had advised plaintiff to participate in at least 150 minutes of moderate exercise per week, which the ALJ found to be inconsistent with Dr. Butt's opinion that, e.g., plaintiff was unable to sit, stand, or walk for even 15 minutes, and required the ability to lie down for more than an hour every time she sat, stood, or walked. (Dkt. #6 at 28, 724-27).

In determining plaintiff's RFC, the ALJ instead relied on the opinions of consulting internist Dr. Samuel Balderman, and consulting psychiatrist Dr. Christine Ransom, affording both "great weight," and incorporating the limitations they identified in her RFC determination. (Dkt. #6 at 22-24, 26, 28).

Dr. Balderman examined plaintiff on January 11, 2017, and observed normal gait and station, full squat, and ability to rise from a chair without difficulty. Plaintiff's cervical and lumbar spine showed full range of motion, with negative straight leg raising tests bilaterally, and full range of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles. Reflexes were normal, with full (5/5) strength in upper and lower extremities. Hand and finger dexterity was intact, with 4+/5 grip strength bilaterally. Dr. Balderman opined that plaintiff had a "mild" limitation for repetitive use of the hands for gross motor work, but suggested that her limitations were expected to "improve over the next six to eight weeks," in light of the fact that plaintiff was, at the time of the examination, still recovering from wrist surgery that had taken place three months prior. (Dkt. #6 at 476-79).

Dr. Ransom examined plaintiff on February 16, 2017, finding plaintiff's appearance, speech, thought processes, affect, mood, attention and concentration, memory skills, cognitive

functioning, insight, and judgment to be wholly normal and/or intact. She opined that plaintiff had no limitations in her ability to follow and understand simple instructions and simple directions, engage in simple tasks independently, maintain attention and concentration for simple tasks, maintain a regular schedule, learn simple tasks, perform complex tasks, relate adequately with others, and deal with stress. (Dkt. #6 at 505-508).

Plaintiff argues that the ALJ failed to properly consider the factors relevant to weighing the opinions of treating and consulting physician, erred in declining to afford controlling weight to Dr. Butt's opinion, failed to duly consider all of Dr. Butt's pre-operative examination notes, and failed to note that despite purported improvement in plaintiff's condition, plaintiff still required additional surgeries even after Ms. Cimorelli's 2018 examination.

The Court disagrees. In assessing Dr. Butt's opinions, the ALJ specifically noted Dr. Butt's status and area of specialty as plaintiff's treating primary care provider, and considered whether her opinions were supported by contemporaneous treatment notes or other evidence, and whether they were consistent with other medical opinions and objective testing. The ALJ's observation that "primary care records, including health maintenance appointments and pre-operative examinations, describe generally stable physical functioning," was not factually erroneous. (Dkt. #6 at 27). Indeed, although plaintiff argues that the ALJ failed to duly consider plaintiff's pre-operative appointments with Dr. Butt, objective findings at those appointments were grossly normal, other than unquantified findings of "limited range of motion" and "tenderness"/"pain" in plaintiff's wrist, forearm and/or elbow. (Dkt. #6 at 533, 626-28, 631-32). The fact that plaintiff required additional surgeries after 2018 testified to her persistent issues with symptoms of Kienbock's disease, which the ALJ identified as a severe impairment, and for which her RFC determination purported to account. Moreover, the ALJ's reliance on the RFC reports of

Dr. Balderman and Dr. Ransom, which were based upon a host of specific findings that supported their conclusions (including, with respect to plaintiff's forearms, wrists, and hands, objective observations of full range of motion and sensation, and measurements of full or nearly-full strength), was not improper. *See Snyder v. Colvin*, 667 Fed. App'x 319, 320 (2d Cir. 2016)("[t]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence").

Whether some of the evidence of record might have been interpreted differently, as plaintiff urges, is not a question the Court may properly consider. Where, as here, the ALJ considered all of the evidence of record in light of the proper factors, supported her findings by citing to substantial evidence in the record, and did not commit reversible factual or legal error, there is no basis for the Court to disturb her findings.

Plaintiff also contends that the ALJ's RFC finding was made without a complete record, because the ALJ did not obtain any new medical opinion evidence, and instead relied upon medical opinions rendered in 2017 – over three years prior to the ALJ's decision on remand.

The Court disagrees. A medical opinion may be considered stale where there is "a significant period of time between the date of the opinion and the hearing date, in addition to subsequent evidence 'indicat[ing] a claimant's condition has deteriorated'" over that time. *Mack v. Saul*, 2020 U.S. Dist. LEXIS 133368 at *4 (W.D.N.Y. 2020)(*quoting Majdandzic v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 180068 at *7 (W.D.N.Y. 2018)). Here, plaintiff makes no argument, and has produced no evidence, concerning any appreciable change in her condition or functioning since the medical opinions were rendered, such that those opinions could be considered stale.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not the product of legal error. The plaintiff's motion for judgment on the pleadings reversing and remanding the matter for further proceedings (Dkt. #11) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #15) is granted, the decision appeal-from is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
    February 16, 2024.